UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAD HAYWARD,

    *Plaintiff*,

v.                                                              CASE NO. 13-CV-10445

COMMISSIONER OF                          DISTRICT JUDGE MARK A. GOLDSMITH
SOCIAL SECURITY,                            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, and Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 11.)

Plaintiff Brad Hayward was 54 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 41.) Plaintiff's work history includes employment as a cleaner for nine years and as a crane hooker for five years, both in the automotive industry. (Tr. at 139.) Plaintiff filed the instant claim on April 20, 2009, alleging that he became unable to work on October 31, 2006. (Tr. at 111-19.) The claim was denied at the initial administrative stage. (Tr. at 66.) In denying Plaintiff's claims, the Commissioner considered bilateral shoulder surgery and obesity as possible bases for disability. (*Id.*) On June 22, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") James F. Prothro, who considered the application for benefits *de novo*. (Tr. at 23-36, 37-62.) In a decision dated August 16, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 33.) Plaintiff requested a review of this decision on August 24, 2011. (Tr. at 20-22.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 6, 2012, when, after review of additional exhibits[2] (Tr. at 273-93), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On February 4, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity since October 31, 2006, the alleged onset date. (Tr. at 28.) At step two, the ALJ found that Plaintiff's status post-bilateral shoulder injuries and surgery in May 2008 and August 2008, cervical degenerative disc disease, neck and arm pain, and sleep apnea were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 28-30.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 31.) The ALJ also found that as of the onset date, Plaintiff was 50 years old, which placed him in the "individual closely approaching advanced age" category. *See* 20 C.F.R. §§ 404.1563, 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 30-31.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 32-33.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that in 2008 Plaintiff was treated for shoulder pain at Orthopaedic Associates of Grand Rapids. (Tr. at 182-202.) In March 2008, Plaintiff was diagnosed by Robert L. DeMaagd, M.D., with "[m]ild bilateral impingement with possible cuff tears." (Tr. at 184.) Dr. DeMaagd recommended physical therapy. (Tr. at 184-85.)

An MRI of Plaintiff's right shoulder taken on April 2, 2008, showed "[n]o evidence of full-thickness rotator cuff tear. There is a tiny focus of partial thickness bursal surface tearing of the distal supraspinatus tendon at the greater tuberosity[,]" "[n]o evidence of labral tear[,]" "[f]indings compatible with adhesive capsulitis[,]" and "[m]ild subacromial-subd bursitis." (Tr. at 195, 269.) Dr. DeMaagd diagnosed "[r]ight shoulder impingement with AC joint osteoarthritis." (Tr. at 186.) In May 2008, Plaintiff underwent a "right shoulder arthroscopy with subacromial decompression, distal clavicle excision, and acromioplasty" and "was found to have an intact rotator cuff." (Tr. at 189, 250-51.)

An MRI of Plaintiff's left shoulder taken on July 6, 2008, showed "[m]ild tendinosis of the supraspinatus and infraspinatus tendons without tear[,]" "[m]ild arthrosis of the acromioclavicular joint[,]" and "[m]inimal subacromial subdeltoid bursitis." (Tr. at 199, 271.) In July 2008, Plaintiff underwent an arthroscopy with anthroscopic subacromial decompression and acromioplasty on the left shoulder. (Tr. at 250-51.)

By August 2008, it was noted that Plaintiff showed "[s]table healing" and was "able to do a full wall climb," but it was "quite painful through the 90 to 130 degree range." (Tr. at 191.) On October 15, 2008, Dr. DeMaagd stated that "[e]xamination shows full range of motion of the right shoulder with good strength. The left shoulder still has some slight limitation of external rotation with some pain with that stretch." (Tr. at 193.) Dr. DeMaagd concluded that Plaintiff would "continue therapy for about the next month. I really do not need to see him again." (*Id.*)

Plaintiff was also treated by the Lowell Medical Specialists from 2006 to 2009 for shoulder pain. (Tr. at 203-13.)

On February 10, 2010, Dr. DeMaagd noted that although Plaintiff underwent surgery in 2008, Plaintiff "feels as though . . . he still has not had any resolution of his symptoms." (Tr. at

8

253.) Dr. DeMaagd examined Plaintiff and found he "does maintain full passive range of motion of his left shoulder" and concluded that Plaintiff had a "[s]table left shoulder with possible mild degenerative changes." (Tr. at 253.)

An MRI of Plaintiff's cervical spine was performed on February 12, 2010, and showed a "[l]arge left posterolateral/foraminal disc protrusion at C6-7 causing impingement of the exiting left C7 nerve root" and "[m]ild degenerative changes at several other levels[.]" (Tr. at 256.) On that same date, an MRI of Plaintiff's left shoulder showed "[s]upraspinatus and infraspinatus tendinosis. No discrete rotator cuff tear" and a "[t]ear of the posterior/superior labrum." (Tr. at 257-58.)

Plaintiff underwent a consultative examination report with Robert L. Griffith, Psy.D., on August 28, 2009. (Tr. at 214-18.) Dr. Griffith noted that Plaintiff was "alert and coherent. He responded to all questions and did not appear to be internally confused. Thinking was sometimes rigid. He described himself as a black and white person." (Tr. at 216.) Dr. Griffith diagnosed anxiety disorder (NOS) with obsessive compulsive personality traits and assessed a GAF score of 55. (Tr. at 217.) Dr. Griffith concluded that Plaintiff "appears able to follow simple instructions. He appears quickly preoccupied by his former employer and his history of conflicts there. His anxiety and tension appear to be ongoing, though some parts of his life are going well. The general prognosis appears to be somewhat guarded." (*Id.*)

A Psychiatric Review Technique was completed by Dr. VanHouten on September 15, 2009. (Tr. at 220-33.) Dr. VanHouten concluded that Plaintiff's Anxiety Disorder, NOS, and OCD traits were not severe. (Tr. at 220, 225, 227.) Dr. VanHouten opined that Plaintiff had only "mild" limitations in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace. (Tr. at 230.)

Plaintiff was referred for a consultative examination with Dr. Elfallal on October 1, 2009. (Tr. at 234-37.) Dr. Elfallal examined Plaintiff and found that Plaintiff's "[r]ange of motion of all joints checked was intact with the only exception in the shoulder. Most of the inhibition occurred in the abduction and in forward elevation." (Tr. at 236.) Plaintiff's "hands have full digital dexterity and a full grip. The patient did not exhibit any difficulty getting on and off the table. The patient is able to heel-to-toe walk and squat. Straight leg raise test was negative. No paravertebral muscle spasms are present." (*Id.*) Dr. Elfallal also indicated that "strength is 5/5 in all extremities[.]" (*Id.*)

A Physical Residual Functional Capacity ("RFC") Assessment was completed by J. Herrington, SDM, on October 9, 2009. (Tr. at 238-45.) The Assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday, and was limited in his ability to push or pull with his upper extremities. (Tr. at 239.) Plaintiff was found to be limited in reaching and should avoid frequent overhead reaching. (Tr. at 241.) There were no postural, visual, communicative, or environmental limitations established. (Tr. at 240-42.)

In his Daily Activity Report, Plaintiff indicated that "[o]n a good day I try to lead a normal life while putting up with shoulder pain" and that "[o]n a bad day I lay low and watch TV." (Tr. at 157.) Plaintiff stated that he takes care of his dog, that he handles his own personal care but experiences pain getting dressed and showering, that he is able to cook, and that as to house and yard work, he "can do most chores but most cause some pain." (Tr. at 159.) Plaintiff stated that he goes outside "daily" and is able to drive and ride in a car, shop in stores, handle his own finances, watches television, goes out to dinner and plays card with others a couple times per month, and goes fishing and hunting, but that "[s]houlder pain limits my ability to hunt and fish as often as I

10

would like." (Tr. at 160-61.) Plaintiff indicated that he does not handle stress well and that he tries to avoid large crowds. (Tr. at 163.)

At the administrative hearing, Plaintiff testified that he lives with his wife and his wife's brother that has Down Syndrome. (Tr. at 41-42.) Plaintiff indicated that he had two surgeries on his shoulders in 2008. (Tr. at 50.) Plaintiff testified that he uses aspirin or other over-the-counter medication for pain and has been prescribed medication for anxiety. (Tr. at 50-51.) When asked what kind of limitations he has, Plaintiff responded, "Well, heavy lifting and, you know, out in front of you . . . ." (Tr. at 51.) Plaintiff indicated that he could lift a gallon of milk, stand for 30 to 40 minutes at a time, and that walking is "a little better" than standing for him. (Tr. at 53-54.) Plaintiff stated that he is comfortable in a recliner because it takes "the weight off my shoulders and back" and that he has "probably five" bad days per month. (Tr. at 54.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> [is] able to do light exertional work. That's lifting up to 20 pounds occasionally, 10 pounds frequently; standing and/or walking for six hours out of an eight-hour day and sitting for about six hours. And, additionally, this person may use the arms occasionally for pushing and pulling bilaterally and must avoid frequent overhead reaching bilaterally.

(Tr. at 58.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 5,400 visual inspection and sorting positions, machine operation and tending positions available in the regional economy. (Tr. at 58-59.) In response to the ALJ's question, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 60.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

11

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 30-31.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld. Specifically, Plaintiff contends that the ALJ "erred as a matter of law in assessing Mr. Hayward's credibility and by failing to properly evaluate the medical records and opinions of evidence, and thereby formed an inaccurate hypothetical that did not accurately portray Mr. Hayward's impairments." (Doc. 8 at 7-12.)

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the

claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to

exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 30-31.) I suggest that the ALJ's findings are supported by substantial evidence. Plaintiff's shoulder surgeries were successful and Plaintiff healed well. (Tr. at 191.) By October 15, 2008, Dr. DeMaagd stated that "[e]xamination shows full range of motion of the right shoulder with good

14

strength. The left shoulder still has some slight limitation of external rotation with some pain with that stretch." (Tr. at 193.) Although Plaintiff continued to report problems with his left shoulder, Dr. DeMaagd found that Plaintiff "maintain[ed] full passive range of motion of his left shoulder" and concluded that Plaintiff had a "[s]table left shoulder with possible mild degenerative changes." (Tr. at 253.) Dr. Elfallel also found that Plaintiff's "[r]ange of motion of all joints checked was intact with the only exception in the shoulder. Most of the inhibition occurred in the abduction and in forward elevation." (Tr. at 236.) Plaintiff's "hands have full digital dexterity and a full grip. The patient did not exhibit any difficulty getting on and off the table. The patient is able to heel-to-toe walk and squat. Straight leg raise test was negative. No paravertebral muscle spasms are present." (*Id.*) Dr. Elfallal also indicated that "strength is 5/5 in all extremities[.]" (*Id.*) In addition, the RFC Assessment concluded that Plaintiff's allegations regarding his shoulder pain were credible but that his other allegations of pain when sitting, standing, or walking were not credible. (Tr. at 243.)

When asked what kind of limitations he has, Plaintiff responded, "Well, heavy lifting and, you know, out in front of you . . . ." (Tr. at 51.) Plaintiff indicated that he could lift a gallon of milk, stand for 30 to 40 minutes at a time, and that walking is "a little better" than standing for him. (Tr. at 53-54.) In addition, Plaintiff testified that he uses only aspirin or other over-the-counter medication for pain. (Tr. at 50-51.) Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's conclusions.

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessments and was in harmony with the objective record medical evidence and Plaintiff's own statements that, despite the pain, "[o]n a good day I try to lead a normal life while

15

putting up with shoulder pain" and that "[o]n a bad day I lay low and watch TV." (Tr. at 157.) Plaintiff also stated that he takes care of his dog, cooks, does house and yard work, goes outside "daily[,]" drives and rides in a car, shops in stores, handles his own finances, watches television, goes out to dinner and plays cards with others a couple times per month, and goes fishing and hunting although his "[s]houlder pain limits [his] ability to hunt and fish as often as [he] would like." (Tr. at 159-61.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins.*

*Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ **Charles E Binder**
                                              CHARLES E. BINDER
Dated: January 24, 2014                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 24, 2014                By     s/Patricia T. Morris
                                                     Law Clerk to Magistrate Judge Binder